IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| DAMARR HUNLEY. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:07-CV-138 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 17] will be granted, and plaintiff's motion for summary judgment [doc. 15] will be denied.

I.

*Procedural History*

Plaintiff was born in 1974. She applied for benefits in April 2004, claiming to be disabled by depression, fatigue, anxiety, and constant total body pain. [Tr. 71, 80].

Plaintiff alleged a disability onset date of April 8, 2003. [Tr. 71].[1] The present applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in August 2005.

By decision dated December 9, 2005, the ALJ ruled plaintiff ineligible for benefits. Plaintiff then sought review from the Commissioner's Appeals Council. In May 2006, the Appeals Council remanded plaintiff's claims, directing the ALJ in pertinent part to "[f]urther evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c)." [Tr. 16].

Plaintiff received a second administrative hearing on September 5, 2006. On September 15, 2006, the ALJ issued a second decision denying benefits. He concluded that plaintiff suffers from "moderate obesity, hypertension, hypothyroidism, musculoskeletal symptoms and a mental disorder characterized as dysthymic disorder, generalized anxiety disorder, and personality disorder," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 31]. Terming her subjective complaints "not credible," the ALJ found plaintiff to have the residual functional capacity ("RFC") to perform light and sedentary exertion subject to certain

---

[1] Pertaining to her claim for disability insurance benefits, plaintiff concedes that her insured status expired on March 31, 2005. [Tr. 460]. Plaintiff bears the burden of demonstrating that she became disabled on or before that date. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

postural and emotional limitations. [Tr. 31]. Relying on vocational expert testimony, the ALJ determined that plaintiff remains able to perform a significant number of jobs existing in the regional and national economies. [Tr. 29, 32]. Plaintiff was accordingly again deemed ineligible for benefits.

Plaintiff then again sought, and was denied, Appeals Council review, despite the submission and consideration of additional medical records. [Tr. 4-9].[2] The ALJ's ruling became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court. *See* 42 U.S.C. § 405(g).

---

[2] Plaintiff's additional documents are discussed in her brief and are included in the administrative record. [Tr. 434-56]. "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted). This court can, however, remand a case for further administrative proceedings, but only if the claimant shows that her evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). *Id*. Despite numerous prior admonitions from this court in other cases, the present plaintiff's law firm has again made no effort to articulate how the late-submitted evidence warrants sentence six remand, nor is sentence six even addressed in plaintiff's briefing. The issue is accordingly waived, and plaintiff's additional medical evidence has *not* been considered. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *see also* Fed. R. Civ. P. 11(b)(2), (c). Counsel is again cautioned that, effective April 10, 2008, all motions and briefs submitted to the undersigned referencing Appeals Council evidence absent a developed application of the sentence six standard will be promptly stricken from the docket. *See Hilton v. Astrue*, No. 2:07-CV-117, 2008 WL 1733149, at *3-4 (E.D. Tenn. Apr. 10, 2008).

II.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

4

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[3]  Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

---

[3] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

III.

*Background*

Plaintiff has a high school equivalency diploma. [Tr. 84]. Her past relevant employment is as a cashier, housekeeper, and personal care assistant. [Tr. 81].

Plaintiff stands 5' 3" and weighs as much as 300 pounds. [Tr. 478]. She alleges that her pain and fatigue interfere significantly with household chores and personal care. [Tr. 94, 98]. Plaintiff also claims to suffer from panic attacks, depression, and carpal tunnel syndrome. [Tr. 96, 463-64, 477, 482]. She testified that she cannot stand for more than one minute or sit for more than ten to thirty minutes, but she can admittedly drive short distances, cook, shop, and perform housecleaning "to the best of my ability." [Tr. 98-99, 329, 462, 476, 483].

Dr. Octavio Pinell has instructed plaintiff to follow a 1,200 calorie diet. [Tr. 120, 356]. The record evidences, at best, poor compliance. [Tr. 120, 194, 217, 219, 290, 409]. Plaintiff blames her obesity on "hypothyroidism," offering sworn testimony that, "I don't eat no more than the average person does." [Tr. 466]. Elsewhere, however, plaintiff has reported that she chronically overeats [Tr. 198], that she overeats especially when "feeling stressed" [Tr. 287, 299, 307], that she eats when "bored" [Tr. 299], and that her appetite is "too good." [Tr. 287].

Plaintiff claims that her husband is "very, very" abusive both physically and emotionally. [Tr. 211, 329, 479]. She has related her emotional complaints in part to her

6

husband. [Tr. 197-98, 284]. The couple separated in July 2005. [Tr. 479-80]. They were back together as of September 2006. [Tr. 467].

The administrative record reveals myriad missed appointments, both cancellations and no-shows, with physical and mental health providers. [Tr. 120, 195-96, 227-28, 285-86, 296-97, 300-01, 303-04, 322]. Plaintiff has elsewhere reported that she is unable to afford medical care. [Tr. 120, 263, 271, 407]. Inexplicably, however, she can afford up to one and one half packs of cigarettes per day. [Tr. 125, 224, 229, 262, 267, 320, 327, 356, 373].

IV.

*Relevant Medical Evidence*

A. <u>Physical</u>

Plaintiff was treated by Dr. Vinaya Belagode from 2001 through 2004. [Tr. 137-77]. Dr. Belagode's objective notes are handwritten and essentially illegible.

Plaintiff purports to have fibromyalgia. [Tr. 94, 96, 198, 327, 476]. In July 2004, Dr. Wesley Eastridge noted an elevated sediment rate of unknown cause. [Tr. 267]. He opined that plaintiff was "currently unable to work for what we're calling fibromyalgia." [Tr. 267]. On November 30, 2004, Dr. Eastridge stated that plaintiff was "tender everywhere I press." [Tr. 264]. In January 2005, Dr. Eastridge wrote that plaintiff was "unable to work for pain and weakness." [Tr. 262]. In June 2005, Dr. Eastridge's staff informed plaintiff that a recent body scan "shows arthritis." [Tr. 319].

7

In June 2004, nonexamining Dr. Donald Williams completed a Physical RFC Assessment. He opined that plaintiff could work at the light level of exertion limited to no more than occasional postural movements such as climbing and kneeling. [Tr. 249-51]. Nonexamining Dr. Frank Johnson completed a Physical RFC Assessment that same month, concluding that plaintiff could perform the full range of light work. [Tr. 255-57].

Upon referral from Dr. Eastridge, plaintiff was evaluated in July 2004 by sleep medicine specialist Robert Rosser secondary to complaints of "significant daytime sleepiness." [Tr. 229]. Dr. Rosser diagnosed probable sleep apnea and scheduled plaintiff for a polysomnography study. [Tr. 231]. Plaintiff was a "no show" for that study, and for three subsequent rescheduled studies, resulting in her discharge from Dr. Rosser's care. [Tr. 227-28].[4]

Plaintiff submitted five pieces of paper which are unsigned and virtually illegible, bearing no indication of the originating source. [Tr. 313-17]. Plaintiff contends that these papers are the "medical records" of a "Dr. Chris Morris." [Tr. 312]. In material part, written on these papers are the words "[t]ender all over" and "FM [fibromyalgia]??" [Tr. 316-17].

Dr. Karl Konrad performed a consultative examination in May 2006. "Twelve point fibromyalgia pressure point testing [was] negative." [Tr. 373]. Plaintiff walked unassisted and without a limp. [Tr. 374]. She exhibited full strength in all extremities,

---

[4] After being discharged by Dr. Rosser, plaintiff told Dr. Eastridge that she "hasn't had time to do sleep study." [Tr. 263].

including full grip strength. [Tr. 374].[5] Dr. Konrad noted the following objective findings: obesity; limited range of motion of the lumbar spine; narrowing at L6-S2; an osteophyte at L6; and tachycardia. [Tr. 375]. Based on his objective findings, Dr. Konrad predicted that plaintiff has "no impairment-related physical limitations." [Tr. 375].

Dr. Joe Allison completed a Physical RFC Assessment in May 2006. Concluding that Dr. Konrad's assessment "is not restrictive enough due to the presence of some pain and obesity," Dr. Allison predicted that plaintiff could work only up to the medium level of exertion without further limitation. [Tr. 395-401].

At the second administrative hearing, plaintiff testified that rheumatologist Ivy McCorder had recently diagnosed her with osteoarthritis of the hands, knees, and hips, along with degenerative disc disease in the upper spine. [Tr. 461-62]. However, imaging provided to Dr. McCorder one month prior to the hearing in fact showed no arthritis in the knees, shoulders or feet, "mild" arthritis in the hands, and possible sacroiliac arthritis. [Tr. 424, 428-33]. Prior to the imaging, consulting physician Ghaith Mitri reported to Dr. McQuirter the impressions of "[p]ossible unspecified connective tissue disease," "[u]nspecified arthropathy," and "[b]ack pain and neck pain but no acute radicular findings." [Tr. 424]. On examination, plaintiff "was tender to the slightest touch all over *out of proportion to any possible physical findings*." [Tr. 424] (emphasis added).

---

[5] By comparison, Dr. Eastridge recorded observations widely ranging from "[c]an make good fists" to "can barely make fists" to "grip normal." [Tr. 262, 264].

9

B. <u>Mental</u>

Plaintiff underwent counseling at Scott County Mental Health Center beginning in July 2004. The initial diagnostic impression of nurse Melissa Cantor was anxiety disorder and major depressive disorder. [Tr. 202]. Psychiatrist Randall Pitone noted intact cognitive functioning, perception, and interaction. [Tr. 199]. Plaintiff acknowledged to Dr. Pitone that her obesity "diminishes her self-esteem and contributes to her depression." [Tr. 199].

A state agency doctor (name illegible) completed a Psychiatric Review Technique in June 2004. The doctor opined that plaintiff suffers: no restriction in activities of daily living; no repeated episodes of extended decompensation; mild limitation in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. [Tr. 188]. Dr. Eugenie Hamilton completed a second Psychiatric Review Technique in November 2004. Dr. Hamilton's functional limitation ratings were the same as those assessed by the previous doctor, with the exception that activities of daily living were mildly restricted. [Tr. 242].

Dr. Rebecca Joslin completed a third Psychiatric Review Technique in April 2006. Dr. Joslin opined that plaintiff suffers: mild restriction in activities of daily living; no repeated episodes of extended decompensation; mild limitation in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. [Tr. 386]. Dr. Joslin then completed a Mental RFC Assessment, concluding that plaintiff

suffers from no more than a moderate limitation in any work related mental activity. [Tr. 390-91].

Beth Ballard, M.A. generated a consultative psychological evaluation in October 2005. The evaluation consisted of an interview and administration of the Personal Assessment Inventory ("PAI") test. In the interview, plaintiff exhibited adequate concentration, comprehension, and recall. [Tr. 328]. The PAI suggested anxiety, depression, low self-image, limited concentration, and limited inability to respond appropriately to criticism. [Tr. 330-31]. The PAI indicated "significant elevations across several scales," suggesting, for example, that plaintiff's "thought processes are likely to be marked by confusion, indecision, distractibility, and difficulty concentrating." [Tr. 330-31]. Ms. Ballard completed a separate vocational assessment, predicting moderate impairment only in the categories of understanding, remembering, and carrying out detailed instructions. [Tr. 333-34].

Plaintiff generally reports that use of psychiatric medication is beneficial. [Tr. 197, 295, 301-02, 304]. In April 2005, she told nurse Cantor that her medication was helping and that "her biggest problem right now is that she feels very irritable and sometimes gets hateful with her children." [Tr. 299]. In May 2006, plaintiff told Dr. James Turnbull that she could not afford her antianxiety medication. [Tr. 407]. There was no evidence of depression, and thought was logical, coherent, and goal-directed. [Tr. 407].

## V.

*Vocational Expert Testimony*

Donna Bardsley ("Ms. Bardsley" or "VE") testified as a vocational expert at the second administrative hearing. The ALJ presented a hypothetical claimant of plaintiff's age, education and work history. The hypothetical claimant would be restricted to light work and "could only bend, squat and kneel, [and] could do only simple, low stress jobs that would not require her to regularly interact with the general public." [Tr. 470]. The VE testified that jobs such as hand packager, sorter, assembler, and inspector would be available in sufficient numbers in the regional and national economies under that hypothetical. [Tr. 470].

If the hypothetical claimant also had a moderately severe restriction in using her hands for gripping and fine manipulation, Ms. Bardsley testified that the above-listed jobs would be eliminated. [Tr. 471]. In addition, if the hypothetical claimant had a "moderately severe impairment" in concentration and persistence, the VE testified that all employment would be precluded. [Tr. 471].

## VI.

*Analysis*

Plaintiff argues that the ALJ did not comply with the Appeals Council's remand instructions and that he afforded insufficient weight to the opinions of her treating physician. The court will address these issues in turn.

A. Appeals Council

Plaintiff correctly points out that the ALJ did not technically comply with the Appeals Council's directive to "[f]urther evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c)." [Tr. 16]. The above-cited regulations provide that an ALJ's decision "must include a specific finding as to the degree of limitation" in the following four areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a, 416.920a.

While those formal specific findings are absent in the decision below, the court finds the error to be harmless in this case. An administrative decision should generally not be reversed and remanded where doing so would be merely "an idle and useless formality." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citation omitted). At the same time, a reviewing court cannot find an error to be harmless solely because the claimant "appears to have had little chance of success on the merits anyway." *Id.* at 546 (citation omitted). Instead, the court must be able to discern at least *some* indirect support, such as where the ALJ's reasoning could be inferred from his overall discussion of the disputed condition. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 463 (6th Cir. 2005).

The ALJ discussed plaintiff's daily activities as being consistent with his RFC findings. [Tr. 30]. The ALJ considered the opinions of the three state agency mental sources [Tr. 30] who did rate plaintiff according to the special technique. The ALJ cited the evaluation by Ms. Ballard, which included consideration of concentration, persistence, and pace. [Tr. 29]. Further, the ALJ cited the records of plaintiff's treating sources [Tr. 28, 30] which generally indicate numerous missed appointments, normal mental status examinations, overall improvement with medication, and situational concerns regarding purported marital problems.

The court acknowledges plaintiff's argument that Ms. Ballard's PAI narrative exceeds the severity of her vocational assessment. The PAI narrative is, however, out of step with the majority of the record evidence, primarily the notes of plaintiff's mental health sources which do not support the allegation that depression and anxiety render plaintiff disabled. Also, to the extent that plaintiff seeks to rely on various Global Assessment of Functioning scores found in the record, those scores have no bearing on the court's analysis, particularly in light of the credibility issues and objective evidence noted throughout this opinion. *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415-16 (6th Cir. 2006).

In sum, the ALJ's conclusions pertaining to the 20 C.F.R. §§ 404.1520a and 416.920a special technique can be adequately inferred from his overall discussion of plaintiff's mental status. On the facts of the instant case, any error is deemed harmless.

B. Treating Physician

Next, plaintiff contends argues that the ALJ erred in discounting the opinions of treating physician Eastridge. This issue is without merit.

Dr. Eastridge noted an elevated sedimentation rate of unknown cause. [Tr. 267]. He opined that plaintiff was "currently unable to work for what we're calling fibromyalgia." [Tr. 267]. He stated that plaintiff was "tender everywhere I press" [Tr. 264] and wrote that she was "unable to work for pain and weakness." [Tr. 262].

The Commissioner is not required to accept a treating physician's opinion if it is not supported by sufficient medical data and if a valid basis is articulated for the rejection. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Certainly, plaintiff's obesity and mild arthritis are conditions that could reasonably be expected to cause some discomfort. *See generally Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). However, a reasonable fact-finder could conclude that plaintiff's documented conditions are not "of such a severity that [they] could] reasonably be expected to produce the alleged disabling pain." *See id.* at 853.

The administrative record shows that plaintiff's sedimentation rate varies and has not been conclusively linked to any condition or level of impairment. Further, Dr. Eastbrook's diagnosis of "what we're calling fibromyalgia" is not supported by the record as a whole.

Certainly, "fibromyalgia patients present no objectively alarming signs. . . . The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-44 (6th Cir. 2007). Dr. Eastbrook's statement that plaintiff that plaintiff was "tender everywhere I press" does not confirm that actual focal points were tested, nor is there indication that enough positive points were present to satisfy the generally recognized standard for fibromyalgia diagnosis. Also, the purported "medical records" of "Dr. Chris Morris," containing in part the words "[t]ender all over" and "FM ??," are unverified and of no value whatsoever.

Conversely, Dr. Konrad conducted "[t]welve point fibromyalgia pressure point testing [which was] negative." [Tr. 373]. On examination by Dr. Mitri, plaintiff "was tender to the slightest touch all over *out of proportion to any possible physical findings*." [Tr. 424] (emphasis added). The present case is simply not comparable to the favorable decision in *Rogers*, where the administrative record was "replete with" credible fibromyalgia diagnoses. *See id.* at 244.

Ultimately, the "pain and weakness" cited by Dr. Eastbrook are subjective conditions. The ALJ concluded that plaintiff's subjective complaints were unsupported and "not credible." [Tr. 30-31]. The ALJ was certainly within reason to view those complaints with suspicion in light of the credibility issues rampant in the instant record.

16

The severity of plaintiff's physical complaints is not corroborated by objective findings. Also, plaintiff purportedly cannot afford beneficial medication and treatment, yet she continues to smoke. Plaintiff reports excessive daytime sleepiness, yet she was a "no-show" for *four* scheduled sleep studies. Plaintiff claims disabling depression and anxiety, yet the records of her treating sources document numerous missed appointments and a nearly normal mental status. Plaintiff has at least twice been instructed to follow a 1,200 calorie diet, but the record shows consistent noncompliance.[6]

In sum, the present record unquestionably contains substantial evidence to support the conclusions that plaintiff's complaints are overstated and that she refuses to responsibly participate in her own health care. Plaintiff's style of life is utterly inconsistent with that of a person who suffers from the limitations alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive [her]self to an early grave, that is [her] privilege – but if [s]he is not truly disabled, [s]he has no right to require those who pay social security taxes to help underwrite the cost of [her] ride.

---

[6] The court stresses that this observation is not relevant merely to plaintiff's failure to lose weight. *See, e.g., Harris v. Heckler*, 756 F.2d 431, 435-36 n.2 (6th Cir. 1985) ("The [Commissioner] is certainly not entitled to presumptions that obesity is remediable or that an individual's failure to lose weight is 'wilful'. [sic] The notion that all fat people are self-indulgent souls who eat more than anyone ought appears to be no more than the baseless prejudice of the intolerant svelte.") (citation omitted). Instead, the court expresses its astonishment with plaintiff's apparent failure to ever genuinely *attempt* to adhere to a proper diet, lose weight, or exercise, despite her physician's recommendations.

*Id.*

The ALJ adequately explained his rejection of Dr. Eastbrook's opinion by citing the lack of supporting objective evidence, inconsistencies with the record as a whole, and credibility issues pertaining to plaintiff's subjective complaints. That decision survives substantial evidence review and will not be reversed by this court. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (citation omitted). The Commissioner's final decision will be affirmed, and an order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge